# Staunton

ELBERT E. KINSER, INDIVIDUALLY AND TRADING AS RAINBOW
CABS, AND ROBERT N. GRAY v. CARL DOUGLAS HAGA,
WHO SUES BY CHARLES M. HAGA, HIS FATHER
AND NEXT FRIEND.

· September 7, 1949.

Record No. 3482.

Present, All the Justices.

The opinion states the case.

*Campbell & Campbell,* for the plaintiffs in error.

*Crowell, Deeds & Sutherland,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Carl Douglas Haga, who sued by Charles M. Haga, his next friend, instituted his action against Elbert E. Kinser, individually and trading as Rainbow Cabs, and Robert N. Gray. The case involved a collision between a bicycle ridden by Carl Haga, a fifteen year old boy, and a taxicab which was owned by Kinser and being operated by Gray. There was a verdict and judgment for the plaintiff.

The collision occurred in the town of Pulaski, on Washington avenue, which carries Highway No. 11, a very busy thoroughfare. The avenue runs north and south, and is intersected on the east side by Dora highway, but Dora highway does not continue through the west side. The accident happened about 6:30 p. m. on May 31, 1947, at which time the weather was clear and the roadway dry. There was no other traffic near by. The grade was approximately level. Carl Haga was riding his bicycle in a northerly direction on Washington avenue, on his right-hand side. When he reached a point in the intersection of Washington avenue and Dora highway, if the lines of Dora highway were extended, he was struck by the taxicab and received serious injuries.

Whiting's filling station is on the west side of Washington avenue and immediately west of the point where Dora highway enters Washington avenue. This filling station, on its north side, had a vacant space or lot which was used as a taxicab stand. The taxicab involved in the collision was standing or parked on that portion of the filling station property. It was some 25 or 30 feet from the curb. It proceeded rapidly into Washington avenue without stopping at the curb and then diagonally across Washington avenue in an effort to proceed east on Dora highway. When about two-thirds of the way over Washington avenue it collided with the bicycle. Gray, the driver of the taxicab, saw young Haga riding up Washington avenue, but Haga did not see the taxicab until it was close upon him. He said, "I glanced over my shoulder * * * I saw the cab coming on me." He had almost cleared the cab at the time of the collision. He said that he was looking down Washington avenue all the time and did not see the taxicab until just about the time he was struck.

The main contention of the petitioners here is that Carl Haga was guilty of contributory negligence as a matter of law, and that the question should not have been submitted to the jury. The argument is that Haga was riding his bicycle along a clear street, in daylight, with nothing to

obstruct his view, and that inasmuch as he did not see the taxicab until about the moment of impact he was guilty of negligence, because the cab was crossing Washington avenue from the west to the east side, and if he had been keeping any lookout he would have seen the cab.

We do not agree with this argument. Haga was charged with the duty of looking out for vehicles which were being lawfully operated on Washington avenue. He was not charged with the duty of expecting or anticipating that a taxicab would start from its stand-still position, 25 or 30 feet west of the curb line, and pull out into the street without stopping or giving any signal, and then proceed rapidly and diagonally across Washington avenue, going in the direction of Dora highway. There is no doubt the driver of the taxi was guilty of negligence in operating the cab in that manner—in fact, his negligence was not contested at the bar of this court. Whether or not Haga in riding his bicycle in the manner described, was guilty of contributory negligence was purely a question for the jury, and the jury has cleared him.

There were six instructions defining and applying the rules of contributory negligence. They more than adequately instructed the jury on this point. The physical characteristics are not unusual. The jury could have found that the only normal traffic that might have been expected by Haga was such as would be on Washington avenue going south, and that which might flow into Washington avenue from Dora highway on the east, and that his primary duty was to look out for that traffic. As he approached Dora highway, a view of traffic from that direction was obstructed by the Wells store building which was located on the southeast corner of these streets, flush with the street line. Under these circumstances, the jury might have found that he was not under a duty of looking for the unusual movement of a taxi that rapidly and unlawfully crossed Washington avenue diagonally.

Instruction C-a, objected to by the defendants, simply told the jury that U. S. Highway No. 11 is a part of the

highway system; that the defendants' taxi entered it from a private drive, and that it was the duty of the driver of the taxi to stop before entering the highway and to yield the right of way to vehicles lawfully using Highway No. 11.

That instruction was based on Code, sections 2154(124) and 2154(132). There can be no doubt but that the driver of the taxi entered the highway from a private drive, and there is evidence that he did not stop or give any signal before he did so. There is no merit in the objection to this instruction.

Instruction "D" contained an abstract proposition of law and was entirely too general in its terms, but when read in connection with the other specific instructions it does not constitute reversible error.

Instruction "F" defined the statutory duties of the driver of the taxicab and was not objectionable. It told the jury, among other things, that it was his duty to look for traffic, to give a signal, to keep his cab under control, to pass beyond the center of the intersection and, as closely as practicable, on the right of the center before turning his cab to the left.

There was nothing novel about the case. The facts were not complicated, and called for only the application of the elementary principles of negligence and contributory negligence. These were for the jury under proper instructions. The doctrine of the last clear chance was not invoked either in the trial court or in this court.

Seventeen instructions were granted by the court, eight upon the request of the plaintiff and nine upon the request of the defendant. It was not necessary that so many instructions be requested and granted in a case involving just two plain issues.

Lastly, it is contended that the verdict was excessive and that its size was influenced by certain statements of counsel for the plaintiff. The plaintiff suffered a compound fracture of the left tibia and fibula. Fragments of the bone protruded through the soft tissue of the skin. He suffered excruciating pain and a moderate degree of shock. In set-

ting the bones it was necessary to cut away the damaged devitalized soft tissue. The fracture was reduced and the bone fixed by means of a metallic bone plate, held by screws which were passed through the bone to hold the plate. The plaintiff was hospitalized from May 31, 1947, to June 27, 1947. The verdict was for $8,000. We are unable to see how there could be any merit in the claim that the verdict is excessive. Upon its face it does not reflect any prejudice or bias on the part of the jury, or that they were influenced by anything that counsel for the plaintiff might have said.

We are of opinion that the judgment should be affirmed.

*Affirmed.*